UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VITALIY Y CHMUKH,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3926-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, asserting his August 21, 2026, redetention, without first receiving notice and an opportunity to be heard, violated his procedural due process rights under the Fifth Amendment. Dkt. 1 at 6-12. He also asserts his removal to Ukraine is not significantly likely to occur in the reasonably foreseeable future and his detention therefore has become effectively indefinite under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). *Id.* at 1, 12-15, 24-26. He seeks release from custody and injunctive relief related to his future redetention and third-country removal. *Id.* at 2, 29-30. Respondents filed a return to the petition, Dkt. 5, together with supporting declarations from U.S. Department of Homeland Security ("DHS")

Deportation Officer Christopher J. Hubbard, Dkt. 6 ("Hubbard Decl."), and their counsel Lawrence Van Daley, Dkt. 7 ("Van Daley Decl."). Petitioner filed a traverse in reply. Dkt. 8.

While the case was pending on the Court's docket, Petitioner filed a motion for a temporary restraining order ("TRO"), Dkt. 10, further discussed below.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, and DENIES the motion for a TRO, Dkt. 10, for the reasons set forth herein.

## I. BACKGROUND

Petitioner is a native and citizen of Ukraine, who first entered the United States in 2001 as a refugee. Hubbard Decl., ¶¶ 2-3. On June 25, 2004, Petitioner's status was adjusted to that of a lawful permanent resident. *Id.* ¶ 4.

Between 2011 and 2018, Petitioner was charged with, and convicted of, numerous state crimes, including theft in the third degree, theft in the second degree, criminal trespass, loitering/drug activity, possession of stolen property, unlawful possession of a firearm in the first degree, possession of a controlled substance (heroin), and identity theft in the second degree. *Id.* ¶ 5.

Following his February 19, 2021, release from Stafford Creek Corrections Center, Petitioner was released into ICE custody. *Id.* ¶ 7. ICE's Office of Enforcement and Removal Operations ("ERO") served Petitioner with a warrant for his arrest, a notice of custody determination, and a notice to appear ("NTA") which charged him with removability under the Immigration and Nationality Act ("INA"). *Id.* ¶¶ 8-9.

On March 11, 2021, an immigration judge denied Petitioner's bond request, finding Petitioner subject to mandatory detention under 8 U.S.C. § 1226(c). *Id.* ¶ 10.

On May 14, 2021, an immigration judge denied Petitioner's applications for relief from removal and ordered him removed to Ukraine. *Id.* ¶ 11. Petitioner filed an appeal of the removal order with the Board of Immigration Appeals ("BIA"), which was subsequently dismissed on October 14, 2021. *Id.* ¶¶ 12-13.

On November 8, 2021, Petitioner filed a petition for review with the Ninth Circuit, which stayed Petitioner's removal pending completion of proceedings. *Id.* ¶ 15.

On April 25, 2022, an immigration judge again denied Petitioner's request for bond, finding no materially changed circumstances from the March 11, 2021, determination that he was mandatorily detained under § 1226(c). *Id.* ¶ 14.

On September 20, 2022, ERO released Petitioner into the United States on an Order of Supervision ("OSUP"), which required, among other conditions, that he not commit any crimes. *Id.* ¶ 16. Respondents do not explain why ERO authorized Petitioner's release from custody if he was subject to mandatory detention under § 1226(c). *See generally* Dkt. 5.

The Ninth Circuit denied Petitioner's petition for review on April 4, 2025. Hubbard Decl., ¶ 17.

On August 1, 2026, Petitioner was arrested in Bellevue, Washington for reckless driving, which was "disposed" without an arraignment or charges being filed on September 16, 2026. Dkt. 1 at 10.

On August 21, 2026, ICE arrested Petitioner after he reported to the ERO field office. Hubbard Decl., ¶ 18. ICE determined that Petitioner's August 1, 2026, arrest for reckless driving violated the terms of his OSUP. *Id.* ICE revoked Petitioner's OSUP and took him into custody. He was thereafter transferred to the NWIPC, where he remains detained. *Id.* ¶ 19.

On September 17, 2026, ERO served Petitioner with a warrant for his arrest, a "Warrant of Removal/Deportation", and a "Warning to [Noncitizen] Ordered Removed or Deported." *Id.* ¶ 20. ERO also conducted an "informal interview" pursuant to revocation of his OSUP and served him with a notice of revocation. *Id.* ¶ 21; *see* Van Daley Decl., ¶ 2, Exs. 5 (informal interview), 4 (notice of revocation). It is not clear from the record, nor explained by Respondents, why these documents were served nearly one month after Petitioner's arrest and redetention.

Officer Hubbard asserts that on October 27, 2026, "Petitioner refused to fill out the application for a travel document request for removal to Ukraine." Hubbard Decl., ¶ 22.

Petitioner filed the instant petition on October 15, 2026. Dkt. 1.

On November 4, 2026, Respondents filed a Notice of Imminent Removal with the Court, which indicated ICE intended to remove Petitioner from the United States. Dkts. 9, 9-1. The notice does not specify a date for Petitioner's removal other than "11/2026" and does not specify which country is designated for removal. *See* Dkt. 9-1. Respondents' notice led Petitioner to file a motion for a TRO that sought to enjoin the Government from removing him to any third country without first providing notice and an opportunity to respond in reopened removal proceedings. Dkt. 10 at 2, 19-20. That same afternoon, Respondents filed separate notice with the Court, the substance of which reads in full:

> Pursuant to the Court's Scheduling Order (Dkt. No. 2), Federal Respondents previously filed a Notice of Imminent Removal (Dkt. No. 9). That notice was filed in compliance with the Scheduling Order after it had been served on Petitioner. Upon further notice from U.S. Immigration and Customs Enforcement, travel documents to Ukraine have not yet been obtained to effectuate removal. Federal Respondents will promptly file a further status update if and when travel documents are obtained or if other material developments occur regarding the timing of removal.

Dkt. 11 at 1.

The Court interprets this notice as both Respondents' recognition that the notice of imminent removal was premature, and that Ukraine remains the anticipated country of removal.

On November 5, 2026, Respondents filed notice with the Court, explaining they did not intend to file a responsive pleading to the pending motion for a TRO. Dkt. 12.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner raises five claims for relief. The first and third claims challenge his August 21, 2026, arrest and redetention as violating both the Fifth Amendment and federal regulations governing the revocation of orders of supervision. Dkt. 1 at 24, 26. The second claim asserts Petitioner's post-final-order detention has become unlawfully indefinite under *Zadvydas*. *Id.* at 24-26. Claims four and five assert Petitioner's third-country removal would violate the Fifth and Eighth Amendments, federal statute, the Convention Against Torture ("CAT"), federal regulations, and the Administrative Procedure Act ("APA"). *Id.* at 27-29.

In response, Respondents assert that 8 U.S.C. § 1231(a) authorizes Petitioner's current detention, that ERO officers complied with regulations and due process when they redetained Petitioner on August 21, 2026, and that his third-country claims "remain unripe." Dkt. 5 at 2.

For the following reasons, the Court finds habeas relief is warranted under Petitioner's procedural due process claim. *See* Dkt. 1 at 24. Petitioner's remaining claims, his request for injunctive relief, and his pending motion for a TRO are addressed below.

**A. *Mathews* and Due Process**

In evaluating Petitioner's procedural due process claim, the parties apply the three-part framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), but reach opposite conclusions. Dkt. 1 at 8-11; Dkt. 5 at 7-9. The Court agrees *Mathews* supplies the appropriate framework for assessing Petitioner's procedural due process claim. *See E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. Due process generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

As for the first factor, Respondents acknowledge Petitioner's private interest in his continued release is "significant," but argue that his release "remain[ed] subject to the conditions of [his] OSUP and the statutory authority to detain under 8 U.S.C. § 1231(a)." Dkt. 5 at 8. This may be true, but the interest nonetheless remained, and it entitled Petitioner to due process prior to its revocation. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). This factor favors Petitioner.

As for the second factor, there was a high risk of erroneous deprivation and value in additional safeguards. It is undisputed that Petitioner was detained without first receiving any notice or an opportunity to respond. *See generally* Dkt. 5. Respondents emphasize that "a documented arrest for reckless driving" demonstrated an OSUP violation that "rested on an objective . . . record rather than a contested credibility determination." *Id.* at 8. Thus, according to Respondents, "the risk of error was minimal" and a "pre-deprivation hearing would have added little value on these facts." *Id.*

This Court has found that "[a]n arrest, standing alone, is not evidence of criminal activity in breach of Petitioner's release conditions." *Singh v. Bondi*, No. C26-0598-SKV, 2026 WL 747104, at *3 (W.D. Wash. Mar. 17, 2026) (citations omitted). Further, Petitioner had not been charged with any crime on the day he was redetained by ICE. Dkt. 8 at 4. Nor has he even today. Petitioner points out in his traverse that the arrest never led to charges being filed or an arraignment hearing scheduled. *Id.*

When the Government authorized Petitioner's OSUP release, it necessarily found that Petitioner posed neither a risk of danger nor flight. *See* 8 C.F.R. § 241.13(b). The unilateral decision to then revoke that release, without evidence that a neutral arbiter redetermined whether Petitioner now poses either of those risks, comes with a high risk of error. *See Alfaro Siguenza v. Hernandez*, No. C26-2670-SKV, 2026 WL 2587980, at *4 (W.D. Wash. Aug. 27, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1323); *see also Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *5 (W.D. Wash. Nov. 25, 2025) ("The factual disputes as to Petitioner's alleged parole violations should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court.").

Further, while Respondents contend ICE followed revocation regulations, Dkt. 5 at 8, that position is not supported by the evidence. Respondents assert that federal "regulations require written notice of the reasons for revocation and an informal interview promptly after return to custody at which the individual may respond and submit evidence." *Id.* (citing 8 C.F.R. § 241.13(i)(3)). Here, however, Petitioner was not provided notice of the revocation, nor an informal interview, until September 17, 2026—nearly one month after he was arrested and redetained. There is a high risk of error when the Government does not follow its own regulations. *See Torres v. Hermosillo*, No. C25-2687-LK, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026). This factor favors Petitioner.

As for the final *Mathews* factor, Respondents assert their interest "in promptly addressing a documented violation of the OSUP outweighs any marginal benefit from additional process." *Id.* at 9. The fact that Respondents redetained Petitioner without realizing criminal charges had not been filed, combined with their failure to comply with revocation regulations, show that the value in additional process was more than just "marginal."

Civil detention proceedings, which themselves are intended to be "nonpunitive in purpose and effect," serve "two regulatory goals: ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (citation modified). Here, however, Respondents do not connect either of those regulatory goals to Petitioner's individual circumstances or their decision to detain. Instead, Respondents explicitly acknowledge Petitioner's "revocation rested on a clear violation of the conditions of release." Dkt. 5 at 9. In other words, Petitioner's detention rests on one ICE agent's unilateral determination that he violated his OSUP and required detention—not because he poses a risk of flight or a danger to the community. To the extent the Government made any attempt to further learn the details of Petitioner's arrest and why charges were not filed, or whether that had any consequence to ICE's detention determination, evidence of such process is not before the Court.

The Government certainly had the authority to redetain Petitioner based on a violation of his OSUP, but "its interest in doing so without a hearing was low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). The Court does not find the Government's asserted interest outweighed Petitioner's liberty interest in remaining free, or the risk of erroneous deprivation. This final factor favors Petitioner.

In sum, the *Mathews* factors favor Petitioner and habeas relief is warranted. Petitioner shall be released from custody. *See Singh*, 2026 WL 747104, at *4.

**B. Remaining Claims, Injunctive Relief, and TRO Motion**

Having determined that Petitioner is entitled to release under *Mathews*, the Court need not reach Petitioner's substantive due process or regulatory claims, as the relief afforded would be duplicative. Those claims are denied as moot.

Petitioner also seeks permanent injunctive relief prohibiting the Government from redetaining him without first satisfying certain criteria. Dkt. 1 at 29.

To be entitled to permanent injunctive relief, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A plaintiff must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Here, Petitioner points to the fact that he was unlawfully redetained once and summarily concludes that all *eBay* factors are therefore met. Dkt. 1 at 21. While the Court has found Petitioner was entitled to additional pre-deprivation process before he was redetained on August 21, 2026, it does not necessarily follow that he continues to face the same risk of unlawful redetention. His request is therefore denied.

In addition, Petitioner seeks to prohibit the Government from removing him to any third country without first reopening removal proceedings to allow him to make a fear-based claim as to the designated third country. Dkt. 1 at 27. He also seeks to prohibit the Government from removing him to any third country where he is likely to be punished or face imprisonment upon arrival. *Id.* at 28-29.

On the current record, Respondents have made clear that ICE is only contemplating removal to Ukraine—Petitioner's native country and that which is designated on his removal orders. *See* Dkt. 5 at 9 ("No third country has been designated for Petitioner's removal.");

Hubbard Decl., ¶ 22 (indicating ICE was applying for a travel document request for Ukraine); Dkt. 11 at 1 (indicating ICE has not yet received travel documents to Ukraine).

While Petitioner challenges ICE's third-country removal policies and practices, generally, Dkt. 1 at 17-24, the current record does not otherwise demonstrate Petitioner faces a risk of third-country removal beyond a "mere possibility." His request is therefore denied without prejudice. Nothing from the Court's Order prevents Petitioner from seeking habeas relief in the future, should he deem it necessary.

For similar reasons, Petitioner is not entitled to a TRO. Dkt. 10. A plaintiff seeking a temporary restraining order must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of the restraining order; (3) that the balance of equities tips in favor of issuing the restraining order; and (4) that issuing the restraining order is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (acknowledging standards for a TRO are the same as those for a preliminary injunction).

Petitioner asserts that "there is no evidence in the record that Respondents have followed any of the legally required procedures set forth under the United States Code and the Code of Federal Regulations before removing Petitioner to the unidentified country." Dkt. 10 at 10-11. That is likely because, as noted above, it does not appear Respondents are contemplating third-country removal for Petitioner. Thus, on the current record, the Court does not find that Petitioner is likely to face irreparable harm in the absence of the TRO. Petitioner's motion for a TRO is accordingly denied.

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition in part, Dkt. 1, and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** under the conditions of the OSUP in effect at the time of his redetention. Respondents shall file a status report with the Court within **forty-eight (48) hours** that Petitioner has been released. Petitioner's substantive due process and indefinite detention claims are DENIED as moot. Petitioner's request for permanent injunctive relief is DENIED without prejudice. Petitioner's pending motion for a TRO, Dkt. 10, is DENIED without prejudice. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Dated this 6th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge